IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 9, 2013 Session

**COREY FINLEY VS. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 0305912     W. Otis Higgs, Jr., Judge**

**No. W2012-02002-CCA-R3-PC - Filed September 26, 2013**

Petitioner, Corey Finley, was convicted by a Shelby County jury of attempted first degree murder. *State v. Corey Finley*, No. W2005-02804-CCA-R3-CD, 2007 WL 1651879, at *1 (Tenn. Crim. App., at Jackson, June 7, 2007), *perm. app. granted*, (Tenn. Oct. 15, 2007), *aff'd after remand*, No. W2007-2321-CCA-RM-CD, 2008 WL 726567 (Tenn. Crim. App., at Jackson, Mar. 18, 2008), *perm. app. denied*, (Tenn. Sept. 29, 2008). He was sentenced to twenty-three years. *Id.* at *8. Petitioner subsequently filed a petition for post-conviction relief arguing that he was afforded ineffective assistance of counsel. The post-conviction court denied the petition after an evidentiary hearing. Petitioner has appealed to this Court. After a thorough review of the record on appeal, we conclude that Petitioner has not proven that he was afforded ineffective assistance of counsel. Therefore, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Lance R. Chism, Memphis, Tennessee, for appellant, Corey Finley.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General, and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

This conviction stemmed from an altercation at a grocery store during which the proof showed that Petitioner and two men were standing outside the grocery store and as the victim entered the store, the two men exchanged words. *Id.* at *1-2. When the victim left the store, one of Petitioner's associates hit the victim, and the Petitioner came out of the store and shot the victim. As stated above, Petitioner was convicted and the trial court sentenced him to twenty-three years. *Id.* at *8. Petitioner appealed from both his conviction and sentence. *Id.* at *1. This Court affirmed the judgment of the trial court. *Id.* at *9.

Petitioner subsequently appealed to our supreme court, and the case was remanded in light of *State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007). *State v. Corey Finley*, No. W2007-02321-CCA-RM-CD, 2008 WL 726567, at *1 (Tenn. Crim. App., at Jackson, Mar. 18, 2008), *perm. app. denied*, (Tenn. Sept. 29, 2008). After analyzing the sentence on remand, this Court affirmed the twenty-three-year sentence. *Id.* at *4.

Subsequently, Petitioner filed a timely pro se petition for post-conviction relief. *Corey Finley*, No. W2010-00902-CCA-RM-PC, 2010 WL 4324342, at *1 (Tenn. Crim. App., at Jackson, Nov. 1, 2010). The post-conviction court summarily dismissed the petition for failure to state a colorable claim. *Id.* Petitioner appealed to this Court, and the judgment was reversed and remanded for a hearing. *Id.* at *3. Counsel was appointed and an amended petition was filed.

The post-conviction court held an evidentiary hearing on the petition. Trial counsel was the first witness. He stated that when he represented Petitioner, he had been practicing law for about thirteen years. Trial counsel stated that he did not object to the use of Petitioner's nickname, A.K., before or during trial because he did not realize its possible significance. Trial counsel testified that his recollection was that the nickname was used in the opening statements by the prosecutor and in one officer's testimony. He said that he also used the nickname when he was cross-examining a witness.

Furthermore, trial counsel recalled Lieutenant Cindy Capps referring to Petitioner's "booking photo" during her testimony. He stated that he did not object because he was anticipating Petitioner testifying. He knew that Petitioner's prior criminal history would most likely come up when Petitioner testified. Also, he stated that he did not like to object multiple times because it gave the impression that a defendant had something to hide and that the defendant's case was weak.

Trial counsel stated that he recalled the jury charge. He did not realize that the trial court did not read the definition of the lesser included offense of reckless endangerment to the

jury. Trial counsel later stated in his testimony that the trial court did include the definition in the written instructions given to the jury immediately prior to deliberation. Trial counsel also stated that the fact that the instruction was omitted from the oral instructions did not affect the outcome because Petitioner was convicted of the charge with which he was indicted.

Petitioner also testified at the hearing. He stated that trial counsel met with him only once before trial and convinced him to testify on his own behalf. Petitioner also testified that trial counsel was not adequately prepared for trial. Petitioner stated that trial counsel should have cross-examined the witnesses more carefully. He also stated that trial counsel did not prepare him for the prosecutor's tone when he questioned Petitioner. He stated that had trial counsel better prepared him he would have realized the prosecutor was trying to provoke him and he would not have raised his voice and spoken directly to the victim at trial. Petitioner stated that he would not have told the victim at trial that he "was not trying to kill" him when he shot him.

On cross-examination, Petitioner stated that he admitted at trial that he shot the victim. He further stated that he shot the victim multiple times as he was lying on the ground.

The final witness at the hearing was the keeper of the records at the Shelby County Jail. She stated that her records showed that trial counsel visited Petitioner one time. However, she also stated that he could have visited with Petitioner other times, but it was not in the record.

The post-conviction court filed a written order denying the petition. Petitioner appeals.

## ANALYSIS

Petitioner argues that trial counsel was ineffective for: (1) failing to file a motion in limine preventing the use of his nickname at trial; (2) failing to request a mistrial when the State used Petitioner's nickname during its opening statement and during its direct examination of Lieutenant Capps; (3) asking a witness about his statement in which he referred to Petitioner by his nickname; (4) failing to object or ask for a mistrial when Lieutenant Capps referred to Petitioner's "booking photo"; (5) failing to object when the trial court failed to define the charge of reckless endangerment; and (6) failing to file a written motion requesting the trial court to charge the jury on the offense of reckless endangerment.

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578

(Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

Petitioner argues on appeal that he was afforded ineffective assistance of counsel when trial counsel did not request a supplemental instruction as to the definition of "state of passion" or object when the trial court decided not to give a supplemental instruction. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . .; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

**Nickname**

Petitioner argues that trial counsel was deficient because he failed to object to the use of Petitioner's nickname, A.K., at various points in the trial. The post-conviction court stated the following in regard to this issue:

> The Tennessee Court of Criminal Appeals held use of a defendant's nickname was harmless error when the prosecution did not "saturat[e] the jury with the defendant's nickname to the extent that the record affirmatively shows that it affected the jury's verdict." [*State v. Joey Dewayne Thompson*, No. E2003-00569-CCA-R3-CD, 2004 WL 1592817, at *10 (Tenn. Crim. App., at Knoxville, July 16, 2004)]. The same court also determined use of a defendant's nickname was harmless error by finding any prejudice that would have resulted from mentioning the nickname would not have been significant when weighed against the overwhelming evidence against the defendant, despite the prosecution's "attempt to make as much mileage as possible form the defendant's unfortunate nickname." [*State v. Hodgkinson*, 78 S.W.2d 54, 63 (Tenn. Crim. App. 1989).] . . . .
>
> In Petitioner's case, the record reflects the State mentioned Petitioner's nickname twice without objection by [trial counsel]: in the State's opening statement and during the State's direct examination of Lieutenant Capps. Thus, this Court finds the State did not "saturate" the jury with Petitioner's nickname or "make as much mileage as possible" by using the nickname so that the nickname references prejudiced Petitioner's trial. Petitioner has failed to show by clear and convincing evidence how preventing use of his nickname would have affected the outcome of his trial.

(footnotes omitted).

In *State v. Joey Dewayne Thompson*, No. E2003-00569-CCA-R3-CD, 2004 WL 1592817 (Tenn. Crim. App., at Knoxville, July 16, 2004), the defendant's nickname was "Joe Thug." 2004 WL 1592817, at *9. At trial, the defendant's nickname was used repeatedly, during the examination of several witnesses and the defendant himself explained his nickname when he testified on his own behalf. *Id*. at *9-10. The defendant argued on direct appeal that introduction of his nickname was prejudicial. This Court concluded that "the prosecution's multiple use of the defendant's nickname during its examination of several witnesses, although improper, was harmless error . . . ." *Id*. at *10. Furthermore, this Court determined that the

-5-

State did not "saturate the jury . . . to the extent that the record affirmatively shows that it affected the jury's verdict." *Id.*

In the case at hand, Petitioner's nickname was used once in the State's opening statement to describe how Lieutenant Capps discovered his identity; in Lieutenant Capps's testimony to describe how she discovered his identity; and in the cross-examination of a witness to the incident to identify Petitioner. The facts do not constitute a saturation of the jury with Petitioner's nickname.

The nickname, "A.K"., is not as obviously inflammatory as the nickname "Joe Thug." Furthermore, trial counsel stated that he did not even realize the possible relevance of Petitioner's nickname to the term A.K.-47. It is possible that many of the jurors did not realize the significance. Petitioner did not present proof at the post-conviction hearing regarding this issue. Most importantly, Petitioner admitted at trial that he shot the victim. Petitioner could have left no question in the mind of the jurors that he would use a gun to shoot someone. When we weigh the few times that the nickname was used at trial compared to the overwhelming evidence at trial, we conclude that Petitioner did not demonstrate a reasonable probability that the outcome of the trial would have been different had trial counsel objected to the nickname or filed a motion to prevent the use of the nickname. In other words, Petitioner has not shown that these failures resulted in prejudice as required in *Strickland* for one of the two prongs.

Therefore, Petitioner is not entitled to relief on this issue.

## Booking Photo

Petitioner argues that trial counsel provided ineffective assistance of counsel for failing to object when Lieutenant Capps stated that she retrieved Petitioner's booking photo for use in a photographic lineup. The post-conviction court concluded that trial counsel's failure to object to this statement was a strategic decision.

We agree with the post-conviction court. Trial counsel testified at the hearing that he did not like to "object to just everything." Trial counsel stated that he believed that multiple objections give the appearance that the defense is trying to hide something and that the defendant is guilty. He also noted that he expected the Petitioner to testify which most likely would have raised the Petitioner's criminal history. Therefore, we agree with the post-conviction court that trial counsel's decision not to object was a tactical decision made with adequate preparation. Therefore, Petitioner has not proven that trial counsel's representation was deficient in this regard.

Furthermore, Petitioner argues that the use of the term "booking photo" would lead the

jury to conclude that Petitioner was a violent criminal and intended to kill the victim. At trial, Petitioner himself stated that he shot the victim multiple times. We conclude that one reference to a booking photo, which implies a previous arrest, does not necessarily point to violence. For this reason, there is not a reasonable probability to conclude that an objection would have affected the outcome. Therefore, Petitioner cannot show that the result of the proceedings would have been different had trial counsel objected to the use of the term booking photo.

Petitioner is unable to meet both prongs of *Strickland*. Therefore, he is not entitled to relief on this issue.

## Jury Instruction

Petitioner also argues that trial counsel was ineffective when he failed to object to the trial court's failure to include the definition of reckless endangerment in the oral instruction and failed to request the inclusion of the instruction prior to trial.

The post-conviction court concluded that because the jury convicted Petitioner of the highest offense for which he was charged, Petitioner did not prove that he was prejudiced. The post-conviction court based this conclusion in part on the fact that if the failure to instruct on a lesser included offense came up on direct appeal it would be considered harmless error if the jury convicts of the highest offense. "The error may be harmless when the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses." *State v. Allen*, 69 S.W.3d 181, 189 (Tenn. 2002) (citing *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998)).

We agree with the post-conviction court. At the conclusion of the trial, the jury convicted Petitioner of attempted first degree murder. In doing so, the jury rejected the lesser included offenses of attempted second degree murder and attempted voluntary manslaughter. It is highly unlikely that the jury would have found Petitioner guilty of reckless endangerment having rejected the higher convictions. Petitioner has not shown that the outcome of his trial would have been different had trial counsel objected to the missing reckless endangerment instruction or to filed a request for reckless endangerment. Therefore, Petitioner is unable to prove that trial counsel's actions were prejudicial. Petitioner has not proven both prongs in *Strickland* in order to prove ineffective assistance of counsel.

Therefore, Petitioner is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of the petition.

_____
JERRY L. SMITH, JUDGE